UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY DALE HINES, | No. 2:98-cv-0784-TLN-EFB DP |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| RONALD DAVIS,[1] | |
| Respondent. | |

Plaintiff is a state death-row prisoner seeking a writ of habeas corpus under 28 U.S.C. § 2254. He requests that the court expand the record. ECF Nos. 264, 319, 329. For the following reasons, it is recommended that the motion be denied without prejudice.

**I.   Background**

This case has proceeded through judgment on petitioner's claims concerning the guilt phase of his criminal trial. ECF Nos. 211, 287. Remaining for determination are petitioner's claims concerning the penalty phase. ECF No. 311. Petitioner seeks to expand the record for the court's review of some of those issues. ECF No. 264. Specifically, petitioner asks the court to expand the record to include the following evidence:

/////

---

[1] The court hereby substitutes Mr. Davis as respondent in this action, as he is the current custodian of petitioner. Rule 2(a), Rules Governing Section 2254 Cases in the District Courts.

1

(1) Expert testimony from Dr. Gretchen White, a clinical psychologist who would evaluate the competence of the penalty-phase defense expert Dr. Edward Glover. This evidence pertains to petitioner's claim that trial counsel was ineffective by failing to conduct a minimally adequate investigation into penalty-phase evidence and failing to present readily available mitigation evidence. According to petitioner, his trial counsel retained Dr. Glover just a few days before the penalty phase began and provided him with insufficient background information about petitioner. As a result, Dr. Glover harmfully testified that petitioner had antisocial personality disorder marked by a tendency to lie, a refusal to accept responsibility, sexual promiscuity, and criminality. ECF No. 264 at 2-3.

(2) Testimony from a medical expert on poly-substance abuse who would opine: (1) that petitioner's use of methamphetamine, marijuana, and alcohol in the days leading up to the murders impaired his mental state and the jury should consider this fact in mitigation and/or (2) that petitioner's drug use so impaired his memory that, although he witnessed another person commit the murders, petitioner believed he was not present. *Id.* at 3-4. This evidence also pertains to petitioner's IAC claim (i.e., that trial counsel was ineffective for not putting on such an expert at petitioner's penalty phase).

(3) Evidence from an investigator who will locate and interview the jurors from petitioner's trial to determine whether prejudicial extrajudicial information was disseminated to them. According to petitioner, Juror Yoder told two other jurors that he feared that friends of petitioner's had followed him leaving the courthouse and were calling him and hanging up. *Id.* at 5-6. (Juror Yoder was excused and did not participate in the penalty phase.) Additionally, Juror Craig read issues of the Sacramento Bee in the jury box several times which contained articles about petitioner's trial.[2] *Id.* at 6.

---

[2] The present status of the claim regarding Juror Craig is unclear. In his August 6, 2004 Opposition to Petitioner's Supplemental Memorandum in Support of Request to Expand the

2

(4) Testimony from an experienced capital defense counsel regarding the prevailing professional norms of practice at the time of petitioner's trial, which would presumably shore up petitioner's IAC claims.

Petitioner argues that he was denied the opportunity to develop and present this evidence in his state habeas proceedings, because the California Supreme Court denied his initial request for funds to do so and then bizarrely granted $10,000 in response to his second request for such funds fourteen months after it had dismissed his petition (and thus had no live claims before it). ECF No. 271 at 5-6 & attached Exhibits.

The magistrate judge originally assigned to this case (the Honorable Peter A. Nowinski) denied petitioner's motion to expand the record on October 19, 2004. ECF No. 274. Judge Nowinski evaluated the motion under Rule 7 of the Rules Governing § 2254 Cases (which gives courts authority to direct parties to expand the record) and 28 U.S.C. § 2254(e) (which governs evidentiary hearings in § 2254 cases). *Id.* at 3-5. Judge Nowinski concluded that petitioner had not been diligent in developing the facts of his claim based on the juror reading the newspaper. *Id.* at 6. But petitioner had diligently developed the facts on the Juror Yoder claim. *Id.*

Regarding petitioner's IAC claims, Judge Nowinski wrote:

> As to facts related to the ineffective assistance of counsel, state habeas counsel either (a) failed to utilize the authorized $10,000 in expenses to obtain factual support for presentation in petitioner's March 1999 second state habeas petition, or (b) utilized the $10,000, developed the facts, and presented them in the second state petition. If the former occurred, then petitioner now cannot surmount the obstacle posed by § 2254(e)(2). If the latter, then present counsel fail to explain why *additional* factual development is necessary in this court. Either way, petitioner's motion to develop facts and expand the record should be denied for procedural reasons.

---

Record (ECF No. 272), respondent represented that petitioner may have abandoned the claim, based on a footnote in petitioner's July 26, 2004 Supplemental Memorandum in Support of Request to Expand the Record. ECF No. 271. There, petitioner stated, "In its oral opposition, the Attorney General claimed that as to one aspect of this jury inquiry (Juror Craig), the Attorney General had conducted a thorough investigation at some point in the state court proceedings. If the Attorney General will disclose to Petitioner's counsel the complete record of that investigation, and if that record reveals that this claim cannot be pursued (due, for example, to the asserted death of the juror), Petitioner's counsel will evaluate whether to dismiss the claim." *Id.*, fn.1.

3

*Id.* at 6.[3] Judge Nowinski further concluded that petitioner's request to expand the record should be denied "on the merits":

> Petitioner challenges the adequacy of his social history and mitigation defense based on the testimony of his aunt, his high school teacher, his ex-girlfriend, and clinical psychologist Dr. Edward Grover (who stated as an expert witness that petitioner suffered from an "antisocial personality disorder" marked by a tendency to lie, refuse to accept responsibility, be sexually promiscuous, engage in criminal activity, and blame others). Petitioner asserts that Dr. Grover, whom defense counsel retained only days before the penalty phase and who spent only two and one half hours interviewing petitioner, was "woefully unprepared" and gave testimony that reinforced the prosecution's position that petitioner was a dangerous person. Petitioner now seeks to retain the services of Dr. White, a clinical psychologist who has conducted over 150 evaluations in capital cases, to evaluate the testimony presented by Dr. Grover and address the mitigating factors which should have been presented to the jury.
>
> During petitioner's penalty trial, defense counsel called witnesses who offered sympathetic glimpses into petitioner's life, tending to relieve him of responsibility for his behavior. Petitioner's aunt, Frita Hines, testified that petitioner lived with her after his father left the family and petitioner's mother, a neglectful alcoholic, died of heart and liver failure. Petitioner's father took two of petitioner's brothers when he left the family and moved to Washington state, but refused to take petitioner. Later, petitioner's father rebuffed petitioner's request to move in with him and find work. Ms. Hines testified petitioner went to church with her son when they were teenagers and cared for her after she was hospitalized in 1985. Ms. Hines also testified petitioner called her often from jail. She begged the jury to spare his life.
>
> Denise Nicol, petitioner's ex-girlfriend, also testified how petitioner's father had rejected him and told the jury petitioner often was very nice to other people and should have a chance to live. Richard O'Toole, one of petitioner's high school teachers, knew petitioner since the seventh grade and also testified about petitioner's home life, stating "[t]here was no one really ever that took him aside or had time enough to take him aside at home or anything or anywhere else and give him that chance. . . . I guess we have accepted it." *See* Reporter's Transcript on Appeal (RT) at 6092.
>
> Petitioner argues that his defense counsel erred by not presenting other family members or sympathetic witnesses. However, defense counsel did present sympathetic witnesses, and petitioner's remaining family clearly were not disposed to testify on his behalf. His father had rejected him numerous times, his mother was dead, and an older brother was in prison. In light of Dr. Grover's testimony, discussed below, this was most likely the best face that could be put on the situation. Petitioner's associates were depraved, not upstanding members of the community. Offering such witnesses likely would have done more harm than good.

---

[3] A review of the docket in petitioner's March 1999 state habeas petition indicates that the claims adjudicated in that action may not have included the penalty-phase IAC claims. *Hines (Gary Dale) in H.C.*, Case No. S077380 (Cal. S. Ct.) (docket available at http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=1809107&doc_no=S077380).

4

Dr. Grover, whom defense counsel did call as an expert, was a clinical psychologist working as a staff psychologist for adolescents at the state hospital in Camarillo, California, and had previously worked as a psychologist at the medium-security State Men's Colony in San Luis Obispo. Grover testified that he had reviewed petitioner's files and records and interviewed petitioner for two and a half hours two days before he testified. Grover diagnosed petitioner with "antisocial personality disorder" caused by poor bonding between mother and child in early development.

Petitioner now complains that his trial counsel failed to retain Dr. Grover early enough to allow him adequately to prepare his testimony. He argues that the shortness and lateness of Grover's interview, and Grover's failure to use psychological background material at trial, prove Grover's lack of preparation.

The Ninth Circuit refuses to "impose a duty on attorneys to require sufficient background material on which an expert can base reliable psychiatric conclusions, independent of any request for information from an expert." *Hendricks v. Calderon*, 70 F.3d 1032, 1038-39 (9th Cir. 1995). Thus, trial counsel were not ineffective in failing to provide background material if Grover never asked for it.

Petitioner would argue that Grover's failure to ask for background material shows counsel retained an incompetent expert. This argument overlooks the fact that petitioner refused to see Dr. Grover before the interview two days before Grover took the stand. RT at 6154. Moreover, it appears Grover did have requisite background material, as he spent over 40 hours on petitioner's case, including reading reports and conferring with petitioner's attorneys. RT at 6153. Petitioner does not dispute that contention.

Dr. Grover competently tied witnesses' testimony about petitioner's turbulent childhood and neglectful parents to a psychological diagnosis, "antisocial personality disorder," that accounted for and, perhaps, made excuses for, petitioner's criminal behavior. The limited time Dr. Grover spent preparing this part of petitioner's defense was imposed by petitioner's refusal to cooperate. Federal habeas proceedings are not a vehicle to reward petitioner with a "better" psychological investigation for that refusal now, 20 years later.

Further, petitioner has not shown Dr. White is any better qualified to assess what Dr. Grover "should" have uncovered during the trial than Dr. Grover was.

In fact, petitioner's behavior consistently supports Dr. Grover's diagnosis of petitioner's antisocial personality disorder marked by a tendency to blame others, including other defendants, trial counsel, the trial judge, experts, current counsel, and the current judge.

I find no grounds on which to expand the record regarding claims counsel was ineffective in failing to obtain a "better" social history expert and "better" mitigation witnesses to humanize petitioner and portray a background of personal misfortune.

Petitioner claims his trial counsel, aware that petitioner had been "high" on certain substances, failed to present the testimony of an expert on poly-substance abuse to demonstrate significant mental impairment on the day of the murders. To demonstrate prejudice from this putative defect, petitioner seeks to retain a medical expert in poly-substance abuse to show what trial testimony could have been, specifically that poly-substance abuse so affected petitioner's memory he

5

actually could have witnessed the murders yet *believed* he was not present at the house.

Petitioner testified at trial that while he waited for co-defendant Houseman at a bus stop, Housman went to the victims' home and petitioner and Houseman later stole a pink roadster from the victims' garage. Petitioner maintained his absence from the house at the time of the murders for almost 20 years. However, 18 years after the murders, on April 7, 2004, petitioner suggested to this court that trial counsel were ineffective for not arguing petitioner was so intoxicated by methamphetamine he could not entertain the mental state for capital murder.

Now, petitioner seeks to show that although he was present during the murders his brain was so impaired by drugs and alcohol that he hallucinated being somewhere else. Petitioner's actions shortly after the murders evince his complete control of his faculties and ability to reason. On the afternoon of the day of the murders, witnesses saw petitioner driving the pink roadster all over Sacramento, successfully navigating freeway and surface street traffic, honking the horn, bragging about the car, hiding the car, and making lists about stolen guns he wanted to sell. These are not the actions of a man suffering from hallucinations. I find no grounds on which to expand the record regarding this claim of ineffective assistance of counsel.

Petitioner claims ineffective assistance of counsel stemming from the facts that caused the trial court to dismiss Juror Yoder during the penalty trial. Yoder told the court he feared for his family's safety because he believed petitioner's friend was "stalking" him. Yoder discussed his fears with two other jurors, Peterson and Kambas. At a hearing, Peterson and Kambas told the court that Yoder's statements had not affected them; neither court nor counsel asked whether they had related Yoder's fears to other jurors. Petitioner requests to hire an investigator to interview other jurors as to whether they knew of Yoder's fears or shared them. [FN: The court already granted funds to hire an investigator to interview jurors and explore this claim. *See* March 9, 1999, order granting investigative funds. The court takes note of petitioner's present silence about the fruit of that investigation.]

Juror Yoder was excused by the trial judge out of an overabundance of caution. Without delving into details, the trial judge explained to the rest of the jury he had excused Yoder to prevent him from feeling uncomfortable about a situation the judge considered to be one of mistaken identity. RT at 6038-39. When the trial judge and defense counsel questioned Peterson and Kambas about their reactions to Yoder's fears, they both stated that they felt there was no reason for concern. RT at 6076-79.

I find it was reasonable for the trial judge and defense counsel to stop the inquiry regarding Yoder's fears after questioning Peterson and Kambas, rather than risk exciting the rest of the jurors. Where Peterson and Kambas said they felt Yoder had no cause for concern, it was reasonable for defense counsel to assume Peterson and Kambas had not spoken to other jurors of the matter. I find no grounds on which to expand the record regarding this claim of extraneous influence on a juror or jurors.

Petitioner also claims the jury was tainted by extraneous information, to wit, a newspaper containing articles about petitioner's trial, which Juror Craig read in the jury box. Neither the trial court nor defense counsel took steps to determine whether Craig or any other juror was exposed to extrajudicial information.

> Petitioner now seeks to retain an investigator to locate and interview jurors to determine if the newspaper influenced the verdict. Petitioner raised a similar claim with respect to the guilt phase, but then failed to offer supporting evidence that any juror actually *read* articles about the trial and failed to oppose summary judgment for respondent on the guilt-phase claim. Now, petitioner again offers no evidence that any juror during the penalty phase read articles about the trial or that, if one did, that it infected the jury with prejudicial extrajudicial information. I find no grounds on which to expand the record regarding this claim of extrajudicial influence on a juror.
>
> Petitioner requests authorization to supplement the record with testimony from an experienced capital case defense attorney, who is prepared to testify that defense counsel's penalty phase performance "fell below an objective standard of reasonableness" under "prevailing professional norms," and there is a "reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).
>
> However, based on the weakness of petitioner's claims of ineffective assistance at penalty trial, there is no need for evidence from a *Strickland* expert.

*Id.* at 7-14. Judge Nowinski followed that ruling with findings and recommendations recommending that the district judge grant summary adjudication of all penalty-phase claims in favor of respondent. ECF No. 298. Petitioner submitted long and vigorous objections to those recommendations. ECF No. 303. In those objections, petitioner argued that the magistrate judge had deprived him of due process by issuing recommendations on the merits of the penalty-phase claims *sua sponte*, because the judge had previously ordered the Attorney General to file a motion for summary judgment on those claims and petitioner was relying on that order and expecting to brief the claims prior to receiving a ruling on them. *Id.* at 18-21. Petitioner asked the court not to consider the recommendations until reviewing Judge Nowinski's denial of the motion to expand the record.

The district judge then assigned to the case (the Honorable Garland E. Burrell, Jr.) reversed the denial of the motion to expand the record and withdrew the findings and recommendations on the penalty-phase claims. ECF No. 311. Judge Burrell found that the basis for the magistrate judge's conclusion that petitioner had failed to develop the factual basis of a claim in state court was "unclear" because respondent's August 6, 2004 opposition brief appeared to concede that petitioner did make an effort to develop facts in state court but that state proceedings had ended before the funds for the investigation became available. *Id.* at 2. Judge

Burrell further wrote that the magistrate judge appeared to have used the wrong standard in citing *Hendricks v. Calderon*, which concerned guilt-phase attorney performance, not penalty-phase attorney performance. *Id.* Judge Burrell identified *Hovey v. Ayers*, 458 F.3d 892 (9th Cir. 2006) as providing the proper penalty-phase standard, under which the attorney does have an obligation to investigate and bring background facts to the attention of mental health experts who are examining the defendant whether those experts request the facts or not. *Id.* at 2-3.

The case now finds itself before a different magistrate judge and a different district judge. The undersigned directed the parties to file supplemental briefs on the motion to expand the record, including briefs on the impact of *Cullen v. Pinholster*, 563 U.S. 170 (2011). ECF Nos. 318, 325. Those briefs have been submitted and the matter stands ready for determination. ECF Nos. 319, 320, 326, 329.

**II.     The Motion to Expand the Record**

   **A.  Applicable Law**

28 U.S.C. § 2254(d) governs federal petitions for writ of habeas corpus filed by state prisoners after April 24, 1996. (The instant petition was filed May 1, 1998.) That statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e) authorizes the court to hold an evidentiary hearing if certain conditions are met and Rule 7 of the Rules Governing Section 2254 Cases in the District Courts allows the court to accept "additional materials relating to the petition." However, in analyzing whether a petitioner has established the elements of § 2254(d), the court may not consider any evidence that was not presented to the state court. *Pinholster*, 563 U.S. at 181. Thus, for claims that were adjudicated on the merits in state court, it is pointless to hold an evidentiary hearing or expand the record

1  prior to performing the analysis required by § 2254(d), because the court will never be permitted
2  to consider the new evidence unless the petitioner satisfies the requirements of that statute. *See*
3  *Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013).

4  **B. Analysis**

5  There is no dispute in this action that the penalty-phase claims that are currently pending
6  were adjudicated on their merits in the California Supreme Court. Petitioner nevertheless argues
7  that *Pinholster* "has no effect at this stage of the proceedings." ECF No. 329 at 4. According to
8  petitioner, it would be economical for the court to grant his motion to expand the record, but then,
9  in accordance with *Pinholster*, "carefully ensure that facts developed for the first time in this
10 court do not intrude on the 2254(d) analysis[.]" *Id.*

11 Respondent argues that, following *Pinholster*, "any discovery or expansion of the record
12 at this time is premature and potentially unnecessary[.]" ECF No. 326 at 6. The court agrees.
13 Allowing expansion of the record at this time, which involves the expense of marshalling the
14 evidence and presenting it to this court, is premature because, until petitioner has overcome the
15 hurdles of § 2254(d), such evidence cannot be considered by the court. It would be a waste of the
16 parties' time, the court's time, and the money needed to obtain the evidence to allow petitioner to
17 create and corral evidence that may never be considered in this action because of *Pinholster*.
18 Accordingly, the motion to expand the record should be denied without prejudice to its renewal
19 with respect to any claim for which the court determines that petitioner has satisfied
20 § 2254(d)(1) or (2).

21 Respondent argues that the court should reinstate Magistrate Judge Nowinski's findings
22 and recommendations on the penalty-phase claims. The undersigned finds, however, that the
23 court would benefit from briefing from the parties on those claims as Judge Nowinski originally
24 indicated so that, among other things, petitioner can address whether the California Supreme
25 Court's adjudication of claims was based on an unreasonable determination of the facts in light of
26 that court's puzzling grant of petitioner's motion for funds to develop evidence over a year after it
27 had denied the petition on the merits. *See Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir.
28 2013) (discussing the standard for determining whether a state court's refusal to consider

1  additional evidence has rendered its fact-finding process unreasonable under § 2254(d)(2)).  By
2  proceeding in this fashion, the court also avoids an unnecessary detour into the question of
3  whether the former magistrate judge's *sua sponte* findings and recommendations on the merits of
4  the penalty-phase claims deprived petitioner of due process.

### III.     Conclusion and Recommendation

For the foregoing reasons, it is hereby RECOMMENDED that the petitioner's motion to expand the record (ECF No. 264) be denied without prejudice and respondent be directed to file a motion for summary judgment on all remaining issues according to a briefing schedule set by the court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 28, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE